UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| Courtney Price, individually, and in her official capacity and next best friend of her son W. P., | : <br> : <br> : <br> : |
| and | : |
| Redia Jennings, | : <br> : |
| *Plaintiffs* | : <br> : |
| v. | Case No. 1:24-cv-1707 <br> : |
| City of Elyria, | : <br> : Judge Pamela A. Barker |
| and | : <br> : |
| Chief William Pelko, | : Magistrate James E. Grimes, Jr. <br> : |
| and | : <br> : |
| James Wise, | : <br> : |
| and | : <br> : |
| Gage Hume, | : ***Jury Demand Endorsed Hereon*** <br> : |
| and | : <br> : |
| Jason Walland, | : <br> : |
| and | : <br> : |
| Richard Fuehrer, | : <br> : |
| and | : <br> : |
| Ali Sabeiha, | : <br> : |
| and | : <br> : |
| Michael Taylor, | : <br> : |
| and | : <br> : |
| Alan Kubas, | : <br> : |
| and | : <br> : |
| Jacob Webber, | : <br> : |
| and | : |

| | |
|---|---|
| Robert Lenz, | : |
| and | : |
| Nicholas Bezbatchenko, | : |
| and | : |
| Andrew Eichenlaub, | : |
| and | : |
| JOHN/JANE DOE (1-30), | : |
| Any Police Officers or Tactical Emergency Medical Service Medics employed by Defendant, Elyria who directly or indirectly participated in the January 10, 2024, raid of Plaintiffs' home and are responsible for Plaintiffs' injuries, | : |
| *Defendants* | : |

# AMENDED COMPLAINT

Plaintiffs, complaining of Defendants, allege as follows:

## PARTIES

1. Plaintiff, Courtney Price ("Courtney"), is a citizen of the United States and resided in Elyria, Ohio, at all relevant times.

2. Plaintiff, Courtney Price, is also a party in her official capacity and next best friend of her son, Plaintiff, W. P., who is a minor, two years of age. W. P. is a citizen of the United States and resided in Elyria, Ohio, at all relevant times.

3. Plaintiff, Redia Jennings ("Redia"), is a citizen of the United States and resided in Elyria, Ohio, at all relevant times.

4. Defendant, City of Elyria ("Defendant, Elyria"), is an Ohio municipal corporation,

2

duly organized in carrying out governmental functions and is the body responsible for the control and oversight of the city's departments, agencies and facilities, including the Elyria Police Department and its ship and Tactical Emergency Medical Service Medics ("TEMS Medics").

5. Defendant, Chief William Pelko, ("Defendant, Pelko") is Defendant, Elyria's, Chief of Police. He is being sued in both his individual and official capacities.

6. Defendants, James Wise, Gage Hume, Jason Walland, Richard Fuehrer, Ali Sabeiha, Michael Taylor, Alan Kubas, Jacob Webber, Robert Lenz, Nicholas Bezbatchenkoe, Andrew Eichenlaub, and John and Jane Doe (1-30), are (or were at all relevant times) employed by Defendant, Elyria, as Police Officers and/or Tactical Emergency Medical Service Medics (collectively "Defendants, Officers"). Defendants, Officers, are being sued in both their individual and official capacities.

7. Regarding Defendants, John and Jane Doe (1-30), Plaintiffs have diligently attempted to identify all of the Officers who were involved in the conduct set forth in this Complaint. However, Plaintiffs have been unable to ascertain all of their identities at the time of filing this Complaint. When they are identified, their names will be substituted for the John and Jane Does at the soonest opportunity.

## JURISDICTION AND VENUE

8. This action arises under the Civil Rights Act of 1871 (42 U.S.C. §§ 1983 and 1985), and the Fourth, Fifth, and Fourteenth Amendments to the United States Constitution.

9. The jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 1331 and 1343. Jurisdiction over the state law claims is conferred by 28 U.S.C. § 1367.

10. Pursuant to 28 U.S.C. § 1391, Venue is properly laid in the Northern District of Ohio, Eastern Division at Cleveland, because Defendants reside and/or are located in Lorain

County, Ohio. Additionally, the events and omissions giving rise to the claims occurred in Lorain County.

## FACTS COMMON TO ALL COUNTS

11. Courtney and Redia are sisters. In early January 2024, Redia was residing at 331 Parmely Avenue, Elyria, Ohio (the "premises"). Redia invited Courtney to live with her since Courtney's son, W. P., was about to be admitted to University Hospitals Rainbow Babies & Children's Hospital ("UH") for medical care.

12. At all relevant times, Pelko, and Defendants, Officers, were acting in their individual capacities, within the course and scope of their employment . They were also acting under color and pretense of law, statute, ordinance, regulation, custom , usage, practice or policy.

13. On January 10, 2024, at approximately 1:30 PM, Defendants, Officers, executed a raid to search the premises. Courtney and W. P. were at the premises at that time. In fact, W. P. was in his crib, using a respirator upon which W. P. relied to provide oxygen to his body.

14. Courtney heard a knock on the door. However, before she was able to reach it, Defendants, Officers, did two things simultaneously. First, they crashed through the front door with a battering ram. Second, they extended a pole with a flash bang attached, which shattered the window of the room where W. P. lay sleeping. When the flash bang detonated, it released toxic smoke which consumed the room forcing W. P. to breathe it in and asphyxiate.

15. Courtney attempted to rescue, and comfort, W. P. However, Defendants, Officers, placed her in handcuffs. She pleaded with them to allow her to go to her W. P., explaining that he was very ill. Yet, Defendants, Officers, refused to allow her to do so within a reasonable period of time.

16. Finally, W. P. was transported to St John's Hospital for treatment as a result of

injuries caused by the flash bang detonation and his inhalation of the resulting toxic smoke. W. P. was subsequently transferred to the Pediatric Intensive Care Unit at University Hospitals' Rainbow Babies & Children due to the urgency of his condition. Once there, W. P. was admitted and required to stay 10 days for treatment. W. P. also required exploratory surgery for a ruptured eardrum sustained as a direct and proximate cause of the flash bang and its toxic smoke.

17. Defendants, Officers, acted recklessly, grossly, and/or negligently. Prior to the raid, they knew, or should have known, that the suspect did not live at the premises. Indeed, they had even been informed of that fact on at least three separate occasions. As a result, they obtained an unjustified warrant and unlawfully raided the house.

18. The event permanently scarred, and caused extreme financial hardship to Plaintiffs, which would have been avoided had Defendants, Officers, not acted in such a reckless, gross, and/or negligent manner when obtaining and executing the search warrant.

19. The purported purpose of the raid was for Defendants, Officers, to search the premises for a suspect, described as a 12-year boy, who was allegedly in possession of a stolen weapon. Yet, Defendants, Officers, frivolously obtained inaccurate information to procure the warrant without any assurances that the suspect was actually at the premises.

20. Plaintiffs never posed a risk of any potential threat and had no weapons. Nor were there any threatening items (e.g., firearms) found during the raid and search. Plaintiffs did not have weapons stored at the home and they did not display any items that appeared to be weapons at any time prior to or during the raid.

21. Defendants had no justifiable reason to use explosives (e.g., flash bang) and the force they deployed at any time during the unlawful search and seizure of Plaintiff's and their home.

5

22. Throughout the ordeal, Plaintiffs were stripped of their constitutional rights to remain free from unreasonable search and seizure. They were also subjected to humiliation, as well as the terrifying destruction of the home they were lawfully occupying, due to Defendants, Officers', reckless, gross, and/or negligent conduct.

23. Defendants' misconduct was a direct and proximate cause of their wrongful acts and omissions. Plaintiffs have suffered, and will continue to suffer, permanent physical and psychological injuries. This includes (but is not limited to) pain and trauma, severe emotional distress and mental anguish, property damage and numerous other physical injuries.

## POLICIES, PRACTICES, AND CUSTOMS

24. Defendants have engaged in similar unlawful searches and seizures in and around the City of Elyria. Defendant, Elyria, has permitted a policy, custom and practice within its police department to engage in unlawful raids, searches, and the use of excessive force. Through their customs, policies, patterns and practices, Defendants have acted intentionally, grossly negligently, recklessly, and with deliberate indifference to Plaintiffs', and others', constitutional rights. As a result, the constitutional rights of Plaintiffs and many other residents have been violated.

25. Defendants' misconduct and indifference reflects an arbitrary abuse of government power, which shocks the conscience.

## COUNT I
### Unreasonable Search and Seizure
### (Section 1983)

26. Plaintiffs incorporate the preceding paragraphs.

27. The Fourth Amendment to the United States Constitution protects the rights of persons to be "secure in their houses" and prohibits "unreasonable searches and seizures". The

Amendment allows search warrants, "upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized".

28. All search warrants must be executed in a reasonable manner and with limited exceptions, law enforcement Officers must knock and identify themselves as Officers and give the occupants of the residence reasonable time to open the door to permit entry by law enforcement Officers, whether executing warrants during the day or at nighttime.

29. Defendants' conduct constituted a search and seizure within the meaning of the Fourth Amendment and their actions were unreasonable in light of the surrounding circumstances.

30. Defendants were acting under color and pretense of law, statute, ordinance, regulation, custom , usage, practice or policy, in their official capacity, by individual and concerted acts and/or omissions.

31. The search of Plaintiffs' home was unconstitutional as it was not based upon probable cause.

32. Defendants knew, or should have known, that the search of Plaintiffs was unlawful under the circumstances and in violation of clearly established law. Despite such knowledge, Defendants, by and through their policy making officials and agents, approved, intentionally ignored, or were deliberately indifferent to the practice of routinely conducting searches without legal cause, and failed to change or eliminate such unlawful policy.

33. Plaintiffs' home was the improper target of the raid because of the deliberate disregard and gross negligence of Defendants, Officers, in failing to use reasonable measures to ensure that the suspect was at Plaintiffs' home and consequently, the home was unlawfully and wrongfully damaged and Plaintiffs were injured during the execution of the raid which was without probable cause.

34. Even assuming, arguendo, that Defendants, Officers, were acting under a valid warrant, they had a duty to conduct the search in a reasonable manner so as to avoid violating Plaintiffs' Fourth Amendment Rights.

35. By handcuffing Courtney, pointing guns at her, and intimidating her, Defendants, Officers', degraded, humiliated, and terrorized Courtney and W. P. in a manner such that they violated Plaintiff's Fourth Amendment and Due Process Rights.

36. At all relevant times, Defendants, Officers, were acting within the scope of their employment for Defendant, Elyria. Their conduct occurred under color and pretense of law, statute, ordinance, regulation, custom , usage, practice or policy.

37. Defendants acted willfully, knowingly and purposely and/or with deliberate indifference of Plaintiffs' constitutional rights.

38. As a direct and proximate result of Defendants' conduct, Plaintiffs suffered injuries (both physical and emotional) and damages. Plaintiffs additionally suffered a deprivation of physical liberty, without justification, pain-and-suffering, humiliation, embarrassment, and degradation, along with a loss of self-esteem, freedom, reputation, and enjoyment of life. Plaintiffs also suffered emotional distress and time and money in endeavoring to protect themselves from Defendants' unlawful conduct.

**COUNT 2**
**Unlawful Use of Excessive Force**
**(Section 1983)**

39. Defendants acted under color and pretense of law, statute, ordinance, regulation, custom , usage, practice or policy.

40. Courtney and W. P. were unlawfully seized by Defendants, Officers,.

41. The force utilized by Defendants, Officers, was unreasonable, unnecessary and

excessive and directly caused injury to Plaintiffs. That conduct amounted to excessive force, which was objectively unreasonable.

42. Defendants' conduct deprived Courtney and W. P. of their constitutional rights to be free from the use of excessive force.

43. Defendants acted willfully, knowingly and purposely and/or with deliberate indifference of Plaintiffs' constitutional rights.

44. As a direct and proximate result of Defendants' conduct, Plaintiffs suffered injuries (both physical and emotional) and damages. Plaintiffs additionally suffered a deprivation of physical liberty, without justification, pain-and-suffering, humiliation, embarrassment, and degradation, along with a loss of self-esteem, freedom, reputation, and enjoyment of life. Plaintiffs also suffered emotional distress and time and money in endeavoring to protect themselves from Defendants' unlawful conduct.

### COUNT 3
### Willful and Wanton Misconduct, Deliberate Indifference/Gross Negligence
### (Section 1983)

45. Plaintiffs incorporate the preceding paragraphs.

46. Defendant, Elyria's, customs, policies and practices, amounted to deliberate indifference. This includes (but is not limited to) a lack of adequate and necessary training and supervision of its employees.

47. At all relevant times, Defendants, Officers, had the following duties, notwithstanding their standard duty of care:

    A.     To use due care and caution in making sure they had identified the correct home that an alleged suspect was believed to be occupying; and

    B.     To conduct the raid in a manner to protect Defendants, Officers, involved but also to respect the dignity of Plaintiffs and not to threaten, humiliate, degrade, injure or terrorize them when doing so was not necessary to

9

accomplish their objectives.

48. All of the individual Defendants, Officers, grossly negligently, recklessly, willfully, wantonly, maliciously, intentionally, knowingly, and/or deliberately breached one or more of the aforementioned duties by:

    A. Failing to use due care and caution in making sure they had identified the correct home that a suspect was believed to be occupying

    B. Failing to conduct the raid in a manner to protect Defendants, Officers, involved but also to respect the dignity of Plaintiffs and not to threaten, humiliate, degrade, injure or terrorize them when doing so was not necessary to accomplish their objectives; and

    C. Other acts and omissions under investigation at this time.

49. Defendant, Elyria, breached its aforementioned duties and was willful and wanton and/or grossly negligent when it conducted itself in a manner so reckless as to demonstrate a substantial lack of concern for whether an injury would result in one, some, or all of the following:

    A. Failing and/or refusing to adequately train, oversee the training of, and/or supervise all employees and/or agents under its control and/or supervision;

    B. Failing and/or refusing to prevent intentional, willful and wanton, reckless, deliberately indifferent, grossly negligent, and/or negligent acts and/or omissions of such employees and/or agents;

    C. Failing and/or refusing to enact, institute, implement, and/or utilize directions, policies, practices, and/or customs from which Defendants and/or their employees and/or agents are to preserve the peace and protect the lawful rights of citizens; and

    D. Failing to prevent, explicitly or implicitly, the intentional, willful and wanton, reckless, deliberately indifferent, grossly negligent, and/or negligent and foreseeable conduct, acts, and/or omissions of Defendants' employees and/or agents.

50. As a direct and proximate result of Defendants' conduct, Plaintiffs suffered injuries (both physical and emotional) and damages. Plaintiffs additionally suffered a deprivation of physical liberty, without justification, pain-and-suffering, humiliation, embarrassment, and degradation, along with a loss of self-esteem, freedom, reputation, and enjoyment of life. Plaintiffs

also suffered emotional distress and time and money in endeavoring to protect themselves from Defendants' unlawful conduct.

## COUNT 4
## Municipal Liability
## Unlawful Custom, Policy or Practice
## (Section 1983)

51. Plaintiffs incorporate the preceding paragraphs.

52. Defendant, Elyria's, policymakers were deliberately indifferent to a known risk that the policy would lead to constitutional violations. Further, The City's customs, policies, and practices, are unlawful. This includes (but is not limited to) grossly negligent, hiring, a lack of training, and supervision of its employees.

53. Defendant, Elyria's, practices were of sufficient duration, frequency, inconsistency, that the conduct became a traditional method of carrying out the City's policy. A connection existed between the city's unlawful conduct, customs, policies, practices and Plaintiffs' injuries and damages.

54. At all relevant times, Defendants, Officers, were acting within the course of their employment, under color and pretense of law, and pursuant to the City's customs, policies, and practices.

55. As a direct and proximate result of Defendants' conduct, Plaintiffs suffered injuries (both physical and emotional) and damages. Plaintiffs additionally suffered a deprivation of physical liberty, without justification, pain-and-suffering, humiliation, embarrassment, and degradation, along with a loss of self-esteem, freedom, reputation, and enjoyment of life. Plaintiffs also suffered emotional distress and time and money in endeavoring to protect themselves from Defendants' unlawful conduct.

## COUNT 5
## False Imprisonment
## (Ohio Law)

56. Plaintiffs incorporate the preceding paragraphs.

57. At all relevant times, Defendants, Officers were acting within the scope of their employment and under color and pretense of law, statute, ordinance, regulation, custom, usage, practice or policy.

58. Defendants, Officers, intentionally confined Courtney within a limited area. They also did so for an unreasonable and appreciable length of time, without lawful privilege, and against Courtney's consent.

59. As a direct and proximate result of Defendants' conduct, Plaintiffs suffered injuries (both physical and emotional), damages, along with a deprivation of physical liberty, without justification, (both physical and emotional), damages, pain-and-suffering, humiliation, embarrassment, self-esteem, and a loss of freedom, reputation, and enjoyment of life. Plaintiffs also suffered emotional distress, humiliation, degradation, and time and money in endeavoring to protect themselves from Defendants' unlawful conduct.

## COUNT 6
## Assault
## (Ohio Law)

60. Plaintiffs incorporate the preceding paragraphs.

61. Defendants intentionally threatened, or attempted to threaten, Plaintiffs without authority or Plaintiffs' consent. Defendants' conduct reasonably placed Plaintiffs in fear of harmful and offensive contact.

62. Defendants, Officers, while acting within the scope of their employment, knowingly and intentionally used shockingly excessive force with the use of high-grade explosives

upon W. P., which constitutes assault. Defendants acted willfully, knowingly and purposely.

63. As a direct and proximate result of Defendants' conduct, Plaintiffs suffered injuries (both physical and emotional) and damages. Plaintiffs additionally suffered a deprivation of physical liberty, without justification, pain-and-suffering, humiliation, embarrassment, and degradation, along with a loss of self-esteem, freedom, reputation, and enjoyment of life. Plaintiffs also suffered emotional distress and time and money in endeavoring to protect themselves from Defendants' unlawful conduct.

## COUNT 7
## Battery
## (Ohio Law)

64. Plaintiffs incorporate the preceding paragraphs.

65. Defendants intentionally made harmful and offensive contact with Courtney and W. P., without the authority or consent to do so.

66. Defendants, Officers, while acting within the scope of their employment, knowingly and intentionally used shockingly excessive force with the use of high-grade explosives upon W. P., which constitutes battery. Defendants acted willfully, knowingly and purposely.

67. As a direct and proximate result of Defendants' conduct, Plaintiffs suffered injuries (both physical and emotional) and damages. Plaintiffs additionally suffered a deprivation of physical liberty, without justification, pain-and-suffering, humiliation, embarrassment, and degradation, along with a loss of self-esteem, freedom, reputation, and enjoyment of life. Plaintiffs also suffered emotional distress and time and money in endeavoring to protect themselves from Defendants' unlawful conduct.

## COUNT 8
### Intentional Infliction of Emotional Distress
### (Ohio Law)

68. Plaintiffs incorporate the preceding paragraphs.

69. At all relevant times, Defendants, Officers, were acting within the scope of their employment under color and pretense of law, statute, ordinance, regulation, custom, usage, practice or policy of their authority as Officers with the Elyria Police Department.

70. Defendants intended to cause, knew or should have known that their actions would result in serious emotional distress. In fact, Defendants' conduct was so extreme and outrageous that it went beyond all possible bounds of decency and can be considered completely intolerable in a civilized community.

71. Defendant's actions proximately caused psychological injury to Plaintiffs who, as a result, suffered serious mental anguish of a nature no reasonable person could be expected to endure.

72. As a direct and proximate result of Defendants' conduct, Plaintiffs suffered injuries (both physical and emotional) and damages. Plaintiffs additionally suffered a deprivation of physical liberty, without justification, pain-and-suffering, humiliation, embarrassment, and degradation, along with a loss of self-esteem, freedom, reputation, and enjoyment of life. Plaintiffs also suffered emotional distress and time and money in endeavoring to protect themselves from Defendants' unlawful conduct.

## COUNT 9
### Negligent Infliction of Emotional Distress
### (Ohio Law)

73. Plaintiffs incorporate the preceding paragraphs.

74. Courtney witnessed and experienced a real or impending danger to W. P.

Furthermore, Defendants' conduct negligently caused the dangerous incident and Defendants' conduct was the proximate cause of Courtney's serious and reasonably foreseeable emotional distress.

75.     Defendants, Officers, inflicted serious injury upon Courtney's infant child, of a nature to cause severe mental disturbance and distress to Courtney who was present to witness, experience extreme shock, and suffer irreparable harm as a result of Defendants, Officers,' conduct.

76.     Defendants, Officers, committed negligent infliction of emotional distress upon Courtney via Defendants, Officers,' grossly negligent execution of a search warrant and wrongful detention of Plaintiff amounting to deliberate, grossly negligent, reckless, willful, wanton, and malicious conduct.

77.     Defendants, Officers, while acting within the scope of their employment, knowingly and intentionally used shockingly excessive force with the use of high-grade explosives upon W. P., which constitutes assault and battery. Defendants acted willfully, knowingly and purposely.

78.     As a direct and proximate result of Defendants' conduct, Plaintiffs suffered injuries (both physical and emotional) and damages. Plaintiffs additionally suffered a deprivation of physical liberty, without justification, pain-and-suffering, humiliation, embarrassment, and degradation, along with a loss of self-esteem, freedom, reputation, and enjoyment of life. Plaintiffs also suffered emotional distress and time and money in endeavoring to protect themselves from Defendants' unlawful conduct.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray that the Court enter judgment in their favor, and against Defendants (jointly and severally) and grant Plaintiffs such legal and equitable relief as may be appropriate by:

1. Ordering Defendants to pay Plaintiffs in excess of $250,000.00 for actual and compensatory damages;

2. Ordering Defendants to pay Plaintiffs in excess of $250,000.00 for general and special damages for emotional distress, humiliation, embarrassment, and anguish;

3. Ordering Defendants to pay Plaintiffs in excess of $250,000.00 for punitive damages so as to deter future intentional, willful, deliberate, reckless, and/or malicious conduct;

4. Ordering Defendants to pay Plaintiffs pre-judgment and post-judgment interest, as provided by law;

5. Ordering Defendants to pay Plaintiffs their costs and reasonable attorneys' fees related to this action, pursuant to 42 U.S.C. § 1988 and other applicable law;

6. Enjoining Defendants from further engaging in the unlawful conduct described in this Complaint; and

7. Awarding Plaintiffs all other relief the Court considers appropriate, fair, and equitable.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues triable to a jury.

/s/ *Mark W. Biggerman*
Mark W. Biggerman (0064092)

Respectfully submitted,

    /s/ *Mark W. Biggerman*

| | |
|---|---|
| William A. Carlin (0009144) | Richard T. Herman (0062314) |
| CARLIN & CARLIN | Herman Legal Group, LLC |
| 29325 Chagrin Blvd., Suite 305 | 408 West St. Clair Ave., Suite 230 |
| Pepper Pike, Ohio 44122 | Cleveland, Ohio 44113 |
| Phone: (216) 831-4935 | Phone: (216) 696-6170 |
| Fax:    (216) 831-9526 | Fax:    (216) 696-0104 |
| Email: wcarlinesq@aol.com | Email: richardtmherman@gmail.com |

Mark W. Biggerman (0064092)
29325 Chagrin Blvd., Suite 305
Pepper Pike, Ohio 44122
Phone: (216) 475-5600
Fax:    (216) 831-9526
Email: mark@mblegal.com

*Attorneys for Plaintiffs*