**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO**

| | |
|---|---|
| **COURTNEY PRICE, et al.,** | **Case No. 1:24-cv-1707-PAB** |
| **Plaintiff,** | |
| **-vs-** | |
| | **JUDGE PAMELA A. BARKER** |
| **CITY OF ELYRIA, et al.,** | |
| **Defendants.** | **MEMORANDUM OPINION & ORDER** |

Currently pending before the Court is Defendants City of Elyria, Chief William Pelko, James Wise, Gage Hume, Jason Walland, Richard Fuehrer, Ali Sabeiha, Michael Taylor, Alan Kubas, Jacob Webber, Robert Lenz, Nicholas Bezbatchenko, and Michael Eichenlaub's (collectively, the "Elyria Defendants") Motion to Sever Plaintiffs' Claims Against Lorain County Defendants. (Doc. No. 39.) Plaintiffs Courtney Price and Redia Jennings[1] filed a Brief in Opposition to the Elyria Defendants' Motion to Sever on June 26, 2025, to which the Elyria Defendants replied on July 3, 2025. (Doc. Nos. 41, 43.) For the following reasons, the Elyria Defendants' Motion is GRANTED.

I.    **Factual Background**

A.    **The January 10, 2024 search**

This case stems from the execution of a search warrant. In the Second Amended Complaint, Plaintiff Courtney Price ("Price") alleges that, in January 2024, her aunt, non-party Redia Jennings ("Jennings"), was residing at 331 Parmely Avenue, Elyria, Ohio. (Doc. 34, ¶ 16.) Price alleges that Jennings invited her and her minor son, W.P., to live with her because W.P. was using a respirator

---

[1] Plaintiff Redia Jennings was dismissed from this action on June 30, 2025 after filing her Brief in Opposition.

and was about to be admitted to University Hospitals Rainbow Babies & Children's Hospital ("UH") for medical care.  (*Id*. at ¶¶ 16, 18.)

At approximately 1:30 p.m. on January 10, 2024, certain City of Elyria police officers and medics (i.e., Defendants Wise, Hume, Walland, Fuehrer, Sabeiha, Taylor, Kubas, Webber, Lenz, Bezbatchenkoe, and Eichenlaub) ("Elyria Officers") allegedly executed a raid to search Jennings' residence while Price and W.P. were present.  (*Id*. at ¶ 18.)  When the Elyria Officers executed the search, Price alleges that they crashed through the front door with a battering ram and extended a pole through a window with a flash bang attached, which shattered the window of the room where W.P. lay sleeping.  (*Id.* at ¶ 19.)  Price alleges that when the flash bang detonated, it released toxic smoke which consumed the room forcing W.P. to breathe it in and asphyxiate.  (*Id.*)

Price alleges that the Elyria Officers refused to allow Price to "rescue and comfort" W.P. "within a reasonable period of time," despite the fact that she explained to the Officers that W.P. was "very ill."  (*Id.* at ¶ 20.)  Price further alleges that W.P. suffered injuries "caused by the flash bang detonation," which caused W.P to stop breathing, and he was "rushed to the Pediatric Intensive Care Unit at University Hospitals' Rainbow Babies & Children due to the urgency of his condition."  (*Id.* at ¶ 21.)  W.P. was allegedly admitted to the hospital for ten (10) days with a diagnosis of chemical pneumonitis and was "subsequently required to undergo exploratory surgery for a ruptured eardrum." (*Id.*)

Price claims that the search was unlawful because "[t]he purported purpose of the raid was for [the Elyria Officers] to search the premises for a suspect, described as a 12-year boy, who was allegedly in possession of a stolen weapon."  (*Id.* at ¶¶ 22, 24.)  Price alleges that the Elyria Officers "frivolously obtained inaccurate information to procure the warrant without any assurances that the

suspect was actually at the premises." (*Id.*)  Allegedly, the Elyria Officers had been informed "on at least three separate occasions" that "a 12-year-old suspect did not live at" Jennings' residence.  (*Id.* at ¶ 22.)  Price alleges that "Plaintiffs never posed a risk of any potential threat and had no weapons" and, further, that no threatening items (e.g., firearms) were found during the raid and search.  (*Id.* at ¶ 25.)

### B.  After this case is filed, Price is indicted by the Lorain County Grand Jury

On October 2, 2024, Price filed her Complaint (Doc. No. 1) against the Elyria Defendants regarding the above allegations.  In her Second Amended Complaint, Price alleges that "[s]hortly, thereafter, during the October 2024 term, an indictment was returned by a Lorain County Grand Jury" for Price.  (*Id.* at ¶ 30.)  The indictment "was based on the offenses of telecommunications fraud, grand theft, and falsification in a theft offense." (*Id.*)  Prices alleges that "the indictment and Grand Jury's findings were premised on false information and false charges filed by" the Lorain County Sheriff, and certain of his deputies.  (*Id.*)  Ultimately, Price alleges that she was arrested for these charges on May 5, 2025.  (*Id.* at ¶ 33.)

The arrest warrant allegedly provides "that the offenses were . . . committed through February 29, 2024." (*Id.* at ¶ 32.)  Price alleges that the criminal prosecution did not begin "until over eight months later . . . within just days of Plaintiffs filing their Complaint in the present matter." (*Id.*)

## II.  Procedural History

As noted above, Price (individually and in her official capacity as next best friend of W.P.) filed her initial Complaint against the Elyria Defendants on October 2, 2024.  (Doc. No. 1.)  On October 23, 2024, Price filed her First Amended Complaint removing certain personal identifiers contained in the original Complaint.  (Doc. No. 3.)  In the First Amended Complaint, Price alleges

the following claims against the Elyria Defendants[2] concerning the allegations related to the January 10, 2024 search: (1) Unreasonable Search and Seizure under 42 U.S.C. § 1983 (Count 1), (2) Unlawful Use of Excessive Force under 42 U.S.C. § 1983 (Count 2), (3) Willful and Wanton Misconduct, Deliberate Indifference/Gross Negligence under 42 U.S.C. § 1983 (Count 3), (4) Unlawful Custom, Policy or Practice under 42 U.S.C. § 1983 (Count 4), (5) False Imprisonment (Count 5), (6) Assault (Count 6), (7) Battery (Count 7), (8) Intentional Infliction of Emotional Distress (Count 8), and (9) Negligent Infliction of Emotional Distress (Count 9).  (*Id.*)

On May 30, 2025, Price filed her Second Amended Complaint ("SAC").  (Doc. No. 34.) Therein, Price added the Lorain County Board of Commissioners, Lorain County Sheriff Jack M. Hall, and John/Jane Smith (1-30)[3] (thereafter and collectively referred to by Price as Defendants' Deputies[4] (herein, collectively, the "Lorain County Defendants") as Defendants.  Price asserts the following five claims against the Lorain County Defendants relating to her indictment and prosecution for telecommunications fraud, grand theft and falsification in a theft offense: (1) Retaliation in Violation of the First Amendment (Count 10); (2) Conspiracy to Violate Price's Civil Rights (Count 11); (3) False Arrest (Count 12); (4) Intentional Infliction of Emotional Distress (Count 13); and (5) Defamation Per Se (Count 14).

On June 13, 2025, the Elyria Defendants filed their Motion to Sever Plaintiffs' Claims Against Lorain County Defendants.  (Doc. No. 39.)  On June 26, 2025, Price filed her Brief in Opposition, to

---

[2] Also named as Defendants in Price's First Amended Complaint are John/Jane Doe (1-30) and she refers to them as "Any Police Officers or Tactical Emergency Medical Service Medics employed by Defendant, Elyria who directly or indirectly participated in the January 10, 2024, raid of Plaintiffs' home and are responsible for Plaintiffs' injuries."  (Doc. No. 3, PageID #23.)

[3] As to Defendants John/Jane Smith (1-30) Price refers to them as "Any Sheriff Deputies and personnel, employed by Defendant, Lorain County Sheriff, Jack M. Hall, involved in the investigation, criminal process, and prosecution of Courtney Price."  (Doc. No. 34, PageID #151.)

[4] (*Id.*, PageID #153.)

4

which Defendants replied on July 3, 2025.  (Doc. Nos. 41, 43.)  The Lorain County Defendants did not respond timely to the Motion to Sever.  Accordingly, the Elyria Defendants' Motion is ripe for review.

## III.    Standard of Review

Permissive joinder of parties is governed by Fed. R. Civ. P. 20(a)(2).  That Rule provides in relevant part as follows:

> Persons . . . may be joined in one action as defendants if:
>
> (A)    any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and
>
> (B)    any question of law or fact common to all defendants will arise in the action.

"However, where the claims are not sufficiently related, the Court may sever any claim against a party" under Fed. R. Civ. P. 21.  *Robinson v. Butler*, No. 3:23-CV-01611, 2024 U.S. Dist. LEXIS 1465, at *9 (N.D. Ohio Jan. 2, 2024) (citing Fed. R. Civ. P. 21).

Rule 21 provides, in relevant part, that "[t]he court may . . . sever any claim against a party." The Sixth Circuit has identified five factors that a district court should assess when deciding whether to sever a claim:

> (1)    whether the claims arise out of the same transaction or occurrence;
>
> (2)    whether the claims present some common questions of law or fact;
>
> (3)    whether settlement of the claims or judicial economy would be facilitated;
>
> (4)    whether prejudice would be avoided if severance were granted; and
>
> (5)    whether different witnesses and documentary proof are required for separate claims.

*Parchman v. SLM Corp.*, 896 F.3d 728, 733 (6th Cir. 2018) (quoting *Productive MD, LLC v. Aetna*

*Health, Inc.*, 969 F. Supp. 3d 901, 940 (M.D. Tenn. 2013)).  "The permissive language of Rule 21 permits the district court broad discretion in determining whether or not actions should be severed." *Parchman*, 896 F.3d at 733 (quoting *Johnson v. Advanced Bionics, LLC*, No. 2:08-CV-02376-JPM, 2011 U.S. Dist. LEXIS 36289, at *20 (W.D. Tenn. Apr. 4, 2011)).

If a district court chooses to sever claims, severing the claims "creates two discrete, independent actions, which then proceed as separate suits for the purpose of finality and appealability." *Kitchen v. Heyns*, 802 F.3d 873, 874–75 (6th Cir. 2015) (quoting *Gaffney v. Riverboat Servs. of Ind., Inc.*, 451 F.3d 424, 411, n.17 (7th Cir. 2006)).  "Courts treat severed claims as if the plaintiff had originally filed two separate lawsuits." *Id.* at 875.

## IV.    Analysis

### A.    A case management order does not supersede the Rules of Civil Procedure

In their Motion, the Elyria Defendants request that the Court sever Plaintiffs' claims against the Lorain County Defendants pursuant to Rules 20 and 21. (Doc. No. 39.)  Before turning to the merits of the Elyria Defendants' Motion, the Court first addresses Price's argument that Rules 20 and 21 are inapplicable and irrelevant at this stage in this case. (Doc. No. 41, PageID #246.)  Specifically, Price argues that these rules are irrelevant because in the Case Management Conference Order, "the Court had given Plaintiffs an absolute right to file their Second Amended Complaint, as a matter of course, and add any new parties." (*Id.* at PageID #245.)  In their Reply, the Elyria Defendants argue that while Price "had a right to add new parties to her Second Amended Complaint pursuant to this Court's Case Management Conference Order," such amendment "must still comply with the Federal Rules of Civil Procedure." (Doc. No. 43, PageID #270.)  The Elyria Defendants further argue that "[a] plaintiff may only add a new defendant when joinder is in accordance with Rule 20." (*Id.* at PageID #271.)

6

The Court agrees with the Elyria Defendants.  When a plaintiff files an amended complaint, that amended complaint must comply with Fed. R. Civ. P. 20.  *Glatz v. Newcomb*, No. 3:22-CV-00093-DCLC-CRW, 2025 U.S. Dist. LEXIS 103108, at \*15 (E.D. Tenn. May 30, 2025) (ordering plaintiff to file an amended complaint to "allow him to correct the improper joinder"); *Dottore v. Nat'l Staffing Servs., LLC*, No. 3:06CV01942, 2007 U.S. Dist. LEXIS 52628, at \*8–9 (N.D. Ohio July 20, 2007) ("Because the Trustee seeks to amend her counterclaims to add Rurban as a counter-defendant, I must consider Rules 15(a), 13(h), 19, and 20").  Price has not cited any case law, and the Court has not found any case law, holding that a case management order supersedes Rule 20's requirements for joinder.  *Compare with Aregood v. Int'l Flavors & Fragrances, Inc.*, No. 1:14-cv-0274-SEB-TAB, 2015 U.S. Dist. LEXIS 193576, at \*6–9 (S.D. Ind. Jan. 13, 2015) (holding that an amended complaint, which was timely filed pursuant to the court's "Case Management Plan," did not satisfy Rule 20).

The only case Price cites to support her argument is *Coblin v. Depuy Orthopedics, Inc.*, No. 3:22-cv-00075-GFVT-MAS, 2024 U.S. Dist. LEXIS 15120 (E.D. Ky. Jan. 29, 2024).  The Court finds *Coblin* inapplicable.  The *Coblin* court did not even address these Rules, much less find that a case management order renders Rule 20 and 21 irrelevant.  Indeed, the *Coblin* court found that a case management order "supplants" Rule 15 with respect to amendments to pleadings.  *Id.* at \*6 (citing *Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1294 (9th Cir. 2000); *E.E.O.C. v. U-Haul Int'l, Inc.*, 286 F.R.D. 322, 324 (W.D. Tenn. 2012)).  While the court used the word "supplant," its interpretation of the case management order was consistent with Rule 15(a)(2).  Specifically, the court found that "[b]y directing the parties to amend pleadings within a certain time frame, it appears that Judge Kinkeade implicitly authorized the parties to amend within that period."  *Id.*  Thus, in effect, the

*Coblin* court found that the case management order permitted amendments pursuant to Rule 15(a)(2) ("a party may amend its pleading only with the opposing party's written consent or the court's leave").

Here, as in *Coblin*, this Court's Case Management Conference Order, consistent with Rule 15(a)(2), effectively granted Price leave to amend her complaint, and join additional parties. (Doc. No. 27 ("The pleadings shall be amended without leave of Court and new parties shall be joined on or before May 30, 2025").) Nothing in the Court's Case Management Order supersedes Rule 20's requirements or indicates that joinder of the Lorain County Defendants was proper. Thus, the Court rejects Price's argument that Rules 20 and 21 are "inapplicable."

**B.      Joinder of the Lorain County Defendants is improper under Rule 20.**

Turning next to the merits of the Elyria Defendants' Motion, the Court first addresses whether there was proper joinder under Rule 20.

In their Motion, the Elyria Defendants argue that "[Price's] claims against the Elyria Defendants and [Price's] claims against the Lorain County Defendants clearly do not arise [out] of the same transaction or occurrence, and do not present some common questions o[f] law or fact." (Doc. No. 39, PageID #235.) The Elyria Defendants assert  that "[Price's] claims against the Elyria Defendants (Counts I–IX of Plaintiff's operative Second Amended Complaint) pertain to [1] the Elyria Police Department's investigation of the firearms burglary at 108 Bell Avenue from January 2, 2024 to January 10, 2024; [2] the Elyria Police Department's procurement of the search warrant for the Premises on January 10, 2024; and [3] the [Special Response Team or "SRT"]  Officers' execution of the obtained search warrant at the Premises on January 10, 2024." (*Id.* at PageID #235–36.) They further argue that "[i]n contrast, [Price's] claims against the Lorain County Defendants

(Counts X–XIV of Plaintiff's Second Amended Complaint) pertain to [1] the Lorain County Sheriff's Office's investigation of [] Price for telecommunications fraud and grand theft from approximately February 2024 to October 2024; [2] the Lorain County Prosecutor's Office's indictment, arrest, and prosecution of [] Price from October 2024 to the date of this filing; and [3] the Lorain County Sheriff's and Prosecutor's Offices' alleged ongoing defamation of [] Price." (*Id.* at PageID #236.)

In her Opposition, Price argues that Rule 20 is satisfied in this case.  Specifically, Price maintains that there is "a logical relationship between [her] retaliation claim against the Lorain County Defendants and [her] claims against the Elyria Defendants" because "[t]hey all primarily involve the conduct, and investigation of the conduct, related to the search warrant and raid." (Doc. No. 41, PageID #251.)  Price further asserts that her conspiracy claim will require "an analysis of, and challenge to, the investigation underlying the conclusions in the Administrative Review."[5] (*Id.*) Price next argues, summarily, that "[t]here is also a logical relationship to the state law tort claims." (*Id.*)  Thus, Price claims that "[i]t is only logical, then, that the legal issues applicable to those facts will be similarly closely related" because "proof that the Lorain County Defendants' investigation was a sham will involve the same legal issue as to the legality of the raid." (*Id.* at PageID #251–52.)

In their Reply, the Elyria Defendants argue that Price "advances no recoverable cause of action against the Lorain County Defendants related to the Sheriff's Office's administrative review" and that, even if she did, "all of Plaintiff's claims against the Elyria Defendants arise prior to the City of Elyria's requested review by the County and none of Plaintiff's claims against the Elyria

---

[5] Price alleges in the Second Amended Complaint, that the Lorain County Sheriff received a request from the City of Elyria to conduct an administrative review of the search warrant and its execution. (Doc. No. 34, ¶ 30.)  Price attached a portion of the Administrative Review to her Opposition. (Doc. No. 41-1.) After conducting the Administrative Review, the Lorain County Sheriff's office believes (while not outright concluding) that the January 10, 2024 search was supported by probable cause. (*Id.* at PageID #259.)  Price alleges that the Administrative Review was a "sham investigation." (Doc. No. 34, ¶ 98.)

Defendants relate to the Elyria Defendants' request for the review."  (Doc. No. 43, PageID #272.)

The Elyria Defendants further argue that "the methods by which the Sheriff's Office conducted their

investigation, the Sheriff's Office's opinions as to the Elyria Defendants' actions, and whether

Plaintiff believes the Sheriff's Office's review was a 'sham' have no impact on Plaintiff's success on

her claims against the Elyria Defendants."  (*Id.*)

As explained above, Rule 20(a)(2) has two-requirements for joinder of parties: (1) "any right

to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out

of the same transaction, occurrence, or series of transactions or occurrences;" and (2) "any question

of law or fact common to all defendants will arise in the action."  Fed. R. Civ. P. 20(a)(2).   For the

following reasons, the Court finds that neither prong of Rule 20(a)(2) is satisfied in this case.

> **1.    The claims against the Lorain County Defendants do not arise out of the same transaction or occurrence as the claims against the Elyria Defendants**

Under Rule 20, "a 'case-specific inquiry' is utilized to determine whether the claims arise out

of the same transaction or occurrence."  *Reynolds v. Merck Sharp & Dohme Corp.*, No. 3:15-cv-397,

2016 U.S. Dist. LEXIS 72120, at *3–4 (N.D. Ohio June 2, 2016) (quoting *Stojcevski v. Cnty. of

Macomb*, 143 F. Supp. 3d 675 (E.D. Mich. 2016)).   "To determine whether claims arise out of the

same transaction or occurrence, the Sixth Circuit evaluates whether there is a logical relationship

between the claims."  *Allstate Ins. Co. v. Electrolux Home Prods.*, No. 1:16cv1946, 2016 U.S. Dist.

LEXIS 165140, at *5 (N.D. Ohio Nov. 30, 2016) (citing *LASA Per L'Industria Del Marmo Soceita

Per Azioni of Lasa, Italy v. Alexander*, 414 F.2d 143, 147 (6th Cir. 1969)).   "[I]f the same issues of

fact would determine both claims, they arise out of the same transaction or occurrence."  *Wood v.

Smith*, No. 2:24-cv-165, 2024 U.S. Dist. LEXIS 90928, at *34 (S.D. Ohio May 21, 2024) (quoting

*LASA*, 414 F.2d at 151).  "[B]ut if the proof of one claim would have no connection with the proof of the other, the claims do not arise out of the same transaction or occurrence."  *CH Liquidation Ass'n Liquidation Trust v. Genesis Healthcare Sys.*, No. 5:18 CV 752, 2020 U.S. Dist. LEXIS 96243, at *7 (N.D. Ohio June 2, 2020) (quoting *Moore v. Mich. Dep't of Corr.*, No. 17-6107, 2018 U.S. App. LEXIS 25325, at *4 (6th Cir. Sept. 5, 2018)).

Here, the Court agrees with the Elyria Defendants that the same issues of fact would not determine the claims against all Defendants.  As alleged in the Second Amended Complaint, the claims against the Elyria Defendants concern conduct occurring *before* and *during* the search, whereas the claims against the Lorain County Defendants concern conduct occurring *after* the search. Furthermore, there are no counts in the Second Amended Complaint that are brought against all Defendants collectively.

For example, Counts 1 through 9 are brought solely against the Elyria Defendants.  Count 1 alleges that the Elyria Defendants' conduct on January 10, 2024 constituted an unlawful search and seizure in violation of Price's rights under the Fourth Amendment.  (Doc. No. 34, ¶¶ 41–45.)  Count 2 alleges that the Elyria Officers unlawfully seized, and used excessive force against, Price and W.P. during the execution of the January 10, 2024 search warrant.  (*Id.* at ¶ 50.)  Counts 3 and 4 challenge the City of Elyria's customs, policies and practices in the execution of search warrants.  (*Id.* at ¶¶ 56–57. 62.)  Count 5 alleges that the Elyria Officers falsely imprisoned Price during the January 10, 2024 search.  (*Id.* at ¶ 69.)  Counts 6 through 9 allege that the Elyria Officers committed the torts of assault, battery, intentional infliction of emotional distress, and negligent infliction of emotional distress during the execution of the January 10, 2024 search.  (*Id.* at ¶¶ 73–74, 79, 83–86, 90–92.)  Thus, these claims concern conduct that occurred before and during the January 10, 2024 search, and relate solely

11

to conduct allegedly committed by the Elyria Defendants.  None of these claims seek relief against the Lorain County Defendants.

The remaining counts are brought solely against the Lorain County Defendants.[6]  Count 10 alleges that Price's indictment and subsequent arrest were in retaliation for Price "exercising [her] right to free speech by speaking to the media and filing the present lawsuit."  (*Id*. at ¶ 96.)  Count 11 alleges that the Lorain County Defendants conspired with the Elyria Defendants "to interfere, and negatively affect [Price's] potential success in the present lawsuit."  (*Id.* at ¶ 103.)  Count 12 alleges that the Lorain County Sheriff and Defendants' Deputies, "caused the unlawful detention of [Price]." (*Id.* at ¶ 110.)   Count 13 alleges that the Lorain County Sheriff, and Defendants' Deputies, intentionally inflicted emotional distress on Price.  (*Id.* at ¶ 114.)  Count 14 alleges that the Lorain County Sheriff, and Defendants' Deputies, committed defamation *per se* by publishing the criminal charges against Price.  (*Id.* at ¶ 120.)  Thus, these claims concern conduct that occurred after the January 10, 2024 search.  Only Count 11 alleges conduct involving the Elyria Defendants, but Price has not brought Count 11 against them.  (*See* Doc. No. 40, PageID #242.)

Upon careful review, the Court finds there that the same issues of fact would not determine the claims against the Elyria Defendants and the claims against the Lorain County Defendants.  The issues of fact concerning the claims against the Elyria Defendants will relate solely to events occurring prior to, and during the execution of, the January 10, 2024 search.  By contrast, the issues of fact concerning the claims against the Lorain County Defendants will relate solely to events occurring after the execution of the January 10, 2024 search.  Notably, Price has not alleged that that

---

[6] Price has not disputed the Elyria Defendants' representation in their Motion that "Plaintiffs have advised that Counts X through XIV of the Second Amended Complaint are not against the Elyria Defendants."  (Doc. No. 39, PageID #233.) The parties also filed Joint Stipulation providing that Count 11 "is in no way directed towards" the Elyria Defendants. (Doc. No. 40, Page ID #242.)

the Lorain County Defendants participated in planning and executing the January 10, 2024 search. Likewise, other than the conspiracy claim, Price has not alleged that the Elyria Defendants participated in any of the conduct forming the allegations regarding Price's indictment and subsequent arrest. And as mentioned above, Price is not seeking relief from the Elyria Defendants with respect to her conspiracy claim in Count 11. Based on the above, the Court finds that the claims against the Elyria Defendants do not have a logical relationship with the claims against the Lorain County Defendants for purposes of Rule 20.

The Court is not persuaded by Price's argument that her retaliation claim (Count 10) and her conspiracy claim (Count 11) arise out of the same transaction or occurrence as her claims against the Elyria Defendants. First, with respect to her retaliation claim (Count 10), Price argues that "the conclusions from the [Lorain County Sheriff's] Administrative Review [of the January 10, 2024 search] were the result of a sham investigation," and thus, "the legitimacy of, and methods used in conducting, the investigation must be scrutinized." (Doc. No. 41, PageID #250–51.) This, as Price suggests, will require her to compare evidence "related to the search warrant and raid" with "the findings of set forth in the Administrative Review." (*Id.* at PageID #251.) The Court disagrees. If Price is correct that the Administrative Review was a "sham investigation," the issues of fact will primarily concern *how* the Lorain County Defendants conducted the investigation *after* the January 10, 2024 search. The underlying facts of the search will not resolve the question of whether the Administrative Review was indeed a "sham investigation," and whether the Lorain County Defendants have retaliated against Price for filing this lawsuit. Moreover, even if the Court later determines that the search was legal, that is not dispositive of whether there was a "sham investigation" by the Lorain County Defendants.

13

The Court is likewise not persuaded by Price's arguments concerning her conspiracy claim (Count 11).   Price argues that she "must depose the individuals involved in obtaining the warrant and conducting the raid, along with any others mentioned in the Administrative Review." (Doc. No. 41, PageID #251.)  The alleged conspiracy has nothing to do with the January 10, 2024 search itself. Instead, as Price alleges, the conspiracy relates solely to interfering with her "potential success in the present lawsuit." (Doc. No. 34, ¶ 103.)  Thus, the issues of fact for Price's conspiracy claim involve the Elyria Defendant's participation, if any, with interfering with Price's "potential success in the present lawsuit."  (*Id*.) The underlying facts of the January 10, 2024 do not affect the question of whether or not the Lorain County Defendants conspired with the Elyria Defendants to interfere with this case.

In sum, the Court finds that the claims against Elyria Defendants do not arise out of the same transaction or occurrence as the claims against the Lorain County Defendants.

### 2. The questions of law or fact are not common to all Defendants in this action

"The 'common question' rule does not require that common questions of law or fact predominate, but instead that the claims involve the same or closely related factual and legal issues." *Allstate*, 2016 U.S. Dist. LEXIS 165140 at *8 (citing *LASA*, 414 F.2d at 147).   "'[T]he fact that there is a common theme' or 'similar issues of liability' is not sufficient to support joinder." *Cruikshank v. Berne Twp.*, No. 2:24-cv-1664, 2024 U.S. Dist. LEXIS 195372, at *6 (S.D. Ohio Oct. 28, 2024) (quoting *Wood*, 2024 U.S. Dist. LEXIS 90928 at *3; *Monda v. Wal-Mart, Inc.*, No. 3:19-cv-155, 2019 U.S. Dist. LEXIS 219015, at *10 (S.D. Ohio Dec. 20, 2019)).

Here, the Court does not find that the "common question" prong of Rule 20(a)(2) is satisfied. There are no claims in the Second Amended Complaint that are brought against all Defendants

14

collectively.  Rather, there are a set of claims against the Elyria Defendants and a separate set of claims against the Lorain County Defendants.  Notably, while Price's conspiracy claim alleges a conspiracy between the Elyria Defendants and the Lorain County Defendants, she is only seeking relief from the Lorain County Defendants on the conspiracy claim.  (Doc. No. 40.)

Further, the claims against the Lorain County Defendants are not dispositive of the claims against the Elyria County Defendants, and vice versa.  Regardless of the legality of the January 10, 2024 search, the Lorain County Defendants could have retaliated against Price for filing this lawsuit, could have conspired with the Elyria Defendants to interfere with Price's success in this lawsuit, and could have defamed her by publishing the criminal charges.  A finding that the January 10, 2024 search was legal or illegal simply does not affect the ultimate outcome of the Price's claims against the Lorain County Defendants.  Likewise, Price's state law tort claims against one set of Defendants is not dispositive of the tort claims against the other set of Defendants because those claims are based on entirely separate conduct.

Thus, because the Court finds that neither prong of Rule 20(a)(2) is satisfied, the Court finds that Price improperly joined the Lorain County Defendants to this action.

### C.    The Court will sever the claims against the Lorain County Defendants under Rule 21

Because the Court has found that joinder of the Lorain County Defendants does not comply with Rule 20, the Court will next determine whether to sever the claims against these Defendants under Rule 21.  As noted above, when considering whether to sever claims under this Rule, the Court considers the following five factors:

(1)    whether the claims arise out of the same transaction or occurrence;

(2)    whether the claims present some common questions of law or fact;

(3)     whether settlement of the claims or judicial economy would be facilitated;

(4)     whether prejudice would be avoided if severance were granted; and

(5)     whether different witnesses and documentary proof are required for separate claims.

*Parchman*, 896 F.3d at 733 (quoting *Productive MD, LLC*, 969 F. Supp. 3d at 940).

Based on the Court's Rule 20(a)(2) analysis, *supra*, the first two factors support severance. The Court addresses the remaining factors in turn below.

### 1.     Judicial economy is unaffected by severance

In their Motion, the Elyria Defendants argue that the third factor weighs in their favor because "judicial economy would be facilitated by severing [Price's] newly added claims against the Lorain County Defendants from [Price's] existing claims against the Elyria Defendants, so each set of Defendants can focus their attention and resources on the issues relevant to their respective defenses of allegations against them."  (Doc. No. 39, PageID #237.)

In her Opposition, Price disagrees, arguing that severance would result in "two separate cases with a significant amount of crossover in factual and legal issues."  (Doc. No. 41, PageID #254.) Price further argues that there would be "duplicative discovery and the same individuals having to give depositions in the separate cases."  (*Id.*)  Price maintains that this could result in summary judgment motions "involving the same issues, but supported and contradicted by differing evidence and testimony, which could lead to different results."  (*Id.*)  Price also argues that "[h]aving the Lorain County Defendants remain in the case would certainly facilitate settlement" because "[i]n general, having multiple defendants involved in a case means the total settlement amount would not be borne by a single defendant."  (*Id.* at PageID #253.)  The Elyria Defendants fail to respond to these arguments in their Reply.  (*See generally* Doc. No. 43.)

The Court finds that this factor is neutral.  The Court finds that judicial economy is neither served nor hindered by severance.  The Court finds that severing the claims against the Lorain County Defendants will not increase the burden on the Court.  Further, severing the claims against the Lorain County Defendants will not cause any delays in this case or in the newly severed case.  Also, the Court finds that adjudicating all of Price's claims in one action would not be any more efficient than adjudicating Price's claims in two separate actions.  The Court, however, does recognize that there may be some overlap in evidence at each respective trial should the claims against the Lorain County Defendants be severed.  But the Court finds that this overlap will be minimal given the fact that Price's claims arise out of separate transactions or occurrences.

With respect to settlement, the Court disagrees with Price's speculative assertion that denying the Elyria Defendants' Motion "would certainly facilitate settlement."  Unlike a claim alleging joint and several liability against two sets of defendants, the Defendants here have no incentive to "point the finger" at each other.  Price's claims are so distinct that the Lorain County Defendants would have no incentive to resolve the matter based on the resolution of the claims against the Elyria Defendants, and vice versa.

### 2. Prejudice would be avoided if severance is granted

The Elyria Defendants next argue that the fourth factor weighs in their favor because they "will suffer undue prejudice if this Court does not sever Price's claims against the Lorain County Defendants" given that Plaintiff and the Elyria Defendants "have nearly concluded liability-related written discovery and have begun discussing scheduling depositions in the coming months."  (Doc. No. 39, PageID #237.)  Moreover, the Elyria Defendants argue that "[i]nclusion of the Lorain County Defendants in this action will necessitate the Elyria Defendants engaging in further written discovery

and attending/defending depositions unrelated to the respective claims against them, needlessly incurring additional costs." (*Id.*)  In her Opposition, Price argues that "no depositions have yet been scheduled" and "there does not appear to be any evidence supporting the likelihood that the Elyria Defendants would suffer any prejudice." (Doc. No. 41, PageID #254.)  The Elyria Defendants fail to acknowledge or address these arguments in their Reply.  (*See generally* Doc. No. 43.)

The Court finds that this factor supports severance.  First, the Court agrees with the Elyria Defendants' argument that they would incur additional discovery costs if severance is denied.  By including the Lorain County Defendants in this action, the Elyria Defendants may find it necessary to spend time and resources to evaluate the written discovery served and responded to by and between Price and the Lorain County Defendants and depositions taken in pursuing and defending the claims against the Lorain County Defendants.  Thus, the additional costs associated with discovery support severance.

Second, and more importantly, the Court finds that there is a potential for prejudice to all Defendants based on potential juror confusion.  The Court finds that "a jury could believe that evidence of alleged wrongdoing by [one set of Defendants] compels a finding of wrongdoing by the other [set of Defendants] creating prejudice." *Cruikshank*, 2024 U.S. Dist. LEXIS 195372 at *8–9.  If there is evidence supporting Price's theory that the January 10, 2024 search was illegal, a jury could make the erroneous conclusion that such evidence compels a finding against the Lorain County Defendants.  Similarly, evidence that the Lorain County Defendants did retaliate against Price for filing this lawsuit could compel a jury to find that the January 10, 2024 search was illegal.  Accordingly, the fourth factor weighs in favor of granting severance.

18

### 3.     Different witnesses and documentary proof are required for separate claims.

Lastly, the Elyria Defendants argue that the fifth factor weighs in favor of severance because "[Price's] claims regarding the Elyria Defendants' pre-January 11, 2024, conduct in investigating, obtaining, and executing the search warrant at the Premises will focus on burglary investigation techniques, police procedure regarding activation of specialized tactical units, and what constitutes excessive force in executing a search warrant for multiple stolen firearms."  (Doc. No. 39, PageID #236.)  They go on to argue that "this will require testimony from a representative of the Elyria Police Department, involved SRT Officers, and individuals with knowledge regarding the tenancy of the Premises."  (*Id.*)  The Elyria Defendants further assert that "[t]his will also presumably require testimony of W.P.'s treating pediatric physicians for the personal injuries allegedly sustained by W.P. as a result of the Elyria Defendants' January 10, 2024, conduct, which in no way relates to [Price's] allegations against the Lorain County Defendants."  (*Id.*)

In her Opposition, Price argues "all documentation related to the search warrant and raid pertain not only to the claims against the Elyria Defendants but also the Lorain County Defendants, since much of that documentation was apparently relied on while performing the Administrative Review."  (Doc. No. 41, PageID #255.)  Price suggests that "[w]hile there may be some witnesses who relate primarily to the claims against the Lorain County Defendants, most will provide testimony critical to [Price's] claims against both sets of Defendants."  (*Id.* at PageID #256–56.)

In their Reply, the Elyria Defendants fail to respond to this argument.  (*See generally* Doc. No. 43.)

The Court agrees with Price that there could be some overlap in witnesses between the Elyria and Lorain County Defendants regarding Lorain County's Administrative Review of the January 10,

19

2024 search.  The Court also recognizes that there will likely be some overlap in witnesses between the Elyria and Lorain County Defendants regarding Price's conspiracy claim.  The Court, however, expects that such overlap will be minimal.  For example, the officers involved in the January 10, 2024 search will likely have no relevant information concerning Price's post-Complaint arrest.  Likewise, persons involved with the decision to indict Price would have no first-hand knowledge of the January 10, 2024 search.  Thus, although a closer call, the Court finds that this factor supports severance.[7]

In sum, upon review of the above factors, the Court finds that severance is appropriate in this case.  Accordingly, the Court grants the Elyria Defendants' Motion to Sever.

## V.    Conclusion

For the reasons set forth herein, the Elyria Defendants' Motion to Sever (Doc. No. 39) is GRANTED.  To implement severance, within 10 business days of this Memorandum Opinion and Order, Price is directed to refile her complaint against the Lorain County Defendants in a separate action and mark the action as related to the above-captioned case.  Upon receipt of Price's complaint, the Clerk's Office shall: (1) waive the filing fee; and (2) mark the newly filed case as related to the original action and assign it to the undersigned District Judge.

**IT IS SO ORDERED.**

 _s/Pamela A. Barker_
PAMELA A. BARKER

Date:  September 25, 2025                              U. S. DISTRICT JUDGE

---

[7] The Court sees no reason why the parties should not coordinate their discovery efforts in this case and the new severed case when there is overlap in documents and witnesses.

20